1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF LOUISIANA

3

4   KIANA AARON MITCHELL,              CIVIL ACTION

5                Plaintiff           NO.  13-5875-"L"

6   VERSUS                            NEW ORLEANS, LOUISIANA

7   BRETT HOOD, ET AL.                WEDNESDAY, APRIL 16, 2014

8                Defendants          10:30 A.M.

9            **THIRD-PARTY DEFENDANTS' MOTION
             TO STRIKE THE COMPLAINT**
10       **BEFORE THE HONORABLE ELDON E. FALLON,
             UNITED STATES DISTRICT JUDGE**
11

12  APPEARANCES:

13  FOR THE PLAINTIFF:           AARON & GIANNA, PLC
                                 BY:  WILLIAM DAVID AARON, JR.
14                               201 St. Charles Avenue
                                 Suite 3800
15                               New Orleans, Louisiana  70170
                                 Telephone:  (504) 569-1800
16
                                 and
17
                                 MITCHELL & ASSOCIATES, APLC
18                               BY:  CRAIG BERNARD MITCHELL
                                 615 Baronne Street, Suite 300
19                               New Orleans, Louisiana  70113
                                 Telephone:  (504) 527-6433
20
                                 and
21
                                 GOINS AARON, APLC
22                               BY:  DEWAYNE WILLIAMS
                                 201 St. Charles Avenue
23                               Suite 3800
                                 New Orleans, LA  70170
24                               Telephone:  (504) 569-1802

25               (APPEARANCES CONTINUED)

```
 1   FOR THE DEFENDANT,
     BRETT HOOD:                    ARGUELLO, HOPE & ASSOCIATES
 2                                  (New Orleans)
                                    BY:  JUSTIN McCARTHY CHOPIN
 3                                  650 Poydras Street, Suite 2110
                                    New Orleans, Louisiana  70130
 4                                  Telephone:  (504) 684-2580

 5   FOR THE THIRD PARTY
     DEFENDANT, ERNESTINE
 6   TEENA ANDERSON-TRAHAN:         STONE, PIGMAN, WALTHER,
                                    WITTMANNN, LLC (New Orleans)
 7                                  BY:  PHILLIP A. WITTMANNN
                                         LESLI D. HARRIS
 8                                       MAGGIE A. BROUSSARD
                                    546 Carondelet Street
 9                                  New Orleans, LA  70130
                                    Telephone:  (504) 581-3200
10

11

12

13

14

15

16

17

18

19

20

21
     REPORTED BY:                   David A. Zarek
22                                  Hale Boggs Building
                                    500 Poydras Street, Room 406
23                                  New Orleans, Louisiana 70130
                                    Telephone:  (504) 523-6062
24
     Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2                       MORNING SESSION

 3                  (WEDNESDAY, APRIL 16, 2014)

 4                 (COURT CONVENED AT 10:30 A.M.)

 5          THE COURT:  Be seated, please.  Good morning, ladies

 6   and gentlemen.  Call the case.

 7          CASE MANAGER OSER:  Civil Action 13-5875, Kiana Aaron

 8   Mitchell v. Brett Hood, et al.  Counsel, make your appearances

 9   for the record, please.

10          MR. WITTMANN:  Phil Wittmann and Lesli Harris and

11   Maggie Broussard for the movant.

12          MR. AARON:  Bill Aaron along with Dewayne Williams

13   and Craig Mitchell on behalf of plaintiff, Kiana Aaron

14   Mitchell.

15          MR. CHOPIN:  Justin Chopin on behalf of defendant,

16   Brett Hood.

17          THE COURT:  Anyone else?

18                       (NO RESPONSE)

19          THE COURT:  Thank you very much.  By way of

20   background, this case involves a postcard that was allegedly

21   mailed to registered voters the day before a run-off election

22   between the plaintiff, Kiana Aaron-Mitchell, and third-party

23   defendant, Earnestine Teena Anderson-Trahan, for the Second

24   City Court Judgeship of New Orleans.

25          According to the plaintiff, the postcard falsely
```

accused her of violently attacking an innocent pregnant woman, and it included Mitchell's date of birth, driver's license and home address.

Mitchell claims that the filing was false and injurious to her personal and professional and political reputation. The postcard stated that it was "paid for by B. Hood, H-O-O-D", and it contained a return address, 200 K. Street, Northwest 709, Washington, D.C.

Mitchell filed the present lawsuit against the defendant, Hood. Mitchell claims that the postcard was printed and mailed on December the 7th, 2012, in order to influence the outcome of the election in favor of Anderson-Trahan, to cause harm to Mitchell.

Mitchell is suing Hood for abuse-of-right and asks to be compensated for compensatory damages, including consequential damages and attorneys' fees and costs.

On February 10, 2014, Hood filed an Amended Answer and Third-Party Complaint. Hood claims that this Court lacks personal jurisdiction over him. He is a Washington resident and he claims that the Court lacks personal jurisdiction over him. And secondly, Hood denies liability for the damages alleged by Mitchell.

In addition, Hood asserts claims against third-party defendants, Anderson-Trahan, and Kelvin P. McClinton. The basis of his complaint is that Hood alleges that sometime prior

1  to the election McClinton asked Hood if he would be willing to

2  allow Anderson-Trahan to use him as a reference.  Hood claims

3  that this was the extent of his involvement in the election.

4  Hood claims that the postcard fraudulently included his name

5  and address, and that he never authorized the use of

6  information in any way or the mailing of the postcard.

7          Hood claims that their actions -- he sued Anderson-

8  Trahan and McClinton for conspiring to steal his identity and

9  to invade his privacy.  Hood claims that their actions caused

10  damage to his personal and professional reputation.

11          In March of 2014, Anderson-Trahan filed the present

12  Motion to Strike the Complaint pursuant to the Louisiana Civil

13  Procedure 971 Anti-SLAPP provision.  Anderson explains that 971

14  created a special motion to strike a cause of action that

15  arises from a person's right of free speech.

16          The movant under 971 -- we know that it is to some

17  extent a shifting of burdens, and the movant must first have

18  showing that they are acting in furtherance of his free speech

19  and if he shows that the burden then shifts to the plaintiff in

20  this case to show that there was a probability of success.

21          Anderson-Trahan argues that as a matter of law

22  Mitchell is unable to succeed on the merits of her claim.

23          The plaintiff responds and says, first of all, that

24  the movant is a third-party, and as a third-party they lack

25  standing on the motion.

Second, they take the position that the message on the postcard was, in fact, an illegal assertion, and that this is an exception; in effect, they say that it is an unauthorized use of a name, this is mail fraud and a violation of the election code; therefore, it is an exception.

And finally, the plaintiff says that, in fact, they would be able to establish a probability of success; and therefore, they need discovery to proceed to trial.

The defendant also responds and takes the position that he agrees with the plaintiff. He argues that he did not send the authorized card. He knows nothing about it, and he, therefore, denies that he is acting in furtherance of his First Amendment right. He said it wasn't him. We are here today on the motion. I will hear from the movant first.

MR. WITTMANN: May I proceed, Your Honor?

THE COURT: Yes, please.

MR. WITTMANN: Okay, thank you. As an initial matter, Judge, the plaintiff, Kiana Mitchell, has introduced and adopt a declaration by Mr. Hood denying all the allegations of her Complaint. If she has adopted Mr. Hood's exculpatory statement, then there is no reason for us to be here and for this case to continue.

As another initial matter, we believe Mr. Hood has submitted to the jurisdiction in this matter and has waived any jurisdictional issues that he might have. At the status

conference the Court held just a few weeks ago, the parties

agreed that jurisdiction had been established and that's

reflected in the Court's minute entry from that status

conference.  So I think those issues are just initial matters

that the Court should consider as we go through the argument

today --

THE COURT:  With regard to the first one, that's the

thing that's a little different in this case than in other

cases, is that in all of the other cases that I have read there

is no question that a person made a statement.  It is a

question of whether or not that was exercising the First

Amendment or not and whether it was in furtherance and so

forth.  But here it is not really clear, and certainly not

stipulated as to who made the statement.

MR. WITTMANN:  Well, certainly not.  But we have not

been sued by the plaintiff.  It is Judge Trahan has not been

sued by the plaintiff in this case at all.  We are only here

because of the third-party demand, and we have got to play the

cards that we are dealt.  We have got to deal with the

pleadings as they stand, and that's what we have to deal with.

THE COURT:  Your position is that if Hood did not

make the statement, and the plaintiff agrees that Hood did not

make the statement --

MR. WITTMANN:  We all go home.

THE COURT:  And then the case is dismissed.

1          MR. WITTMANN:  That's correct.

2          THE COURT:  How about -- and I ask, I have to ask the

3  plaintiff that, but as I understand, the McClendon is it?

4          MR. WITTMANN:  McClinton.

5          THE COURT:  -- McClinton has been added new as a

6  defendant.

7          MR. WITTMANN:  That's correct.

8          THE COURT:  So the question is, if he made the

9  statement, what's the situation at that point?

10          MR. WITTMANN:  Well, Mr. McClinton, I don't think

11  McClinton is affected by this motion one way or the other.  He

12  hasn't filed any pleading with respect --

13          THE COURT:  When you say you go home, he is still

14  here?

15          MR. WITTMANN:  Well, if he was, I'm not clear that he

16  is who is added as a defendant or as a third-party.

17          THE COURT:  Well, no question a third-party.  But I

18  think then the plaintiff amended.

19          MR. AARON:  He is added.  He is a defendant and a

20  third-party.

21          THE COURT:  That's the confusing thing.  If he wasn't

22  a defendant, then it may be easier to look at.  But if he is a

23  defendant, that makes it a little more difficult.  You may go

24  home -- he may be here.

25          MR. WITTMANN:  And if he is a defendant, we still may

1   all go to another Court because he still has diversity.

2           THE COURT:  Could be.  Well, is he a Louisiana

3   citizen?

4           MR. AARON:  He is a resident of the State of

5   Maryland.  That destroys diversity.

6           THE COURT:  I thought that there was diversity on

7   both of those.

8           MR. WITTMANN:  Okay.  In that case, we can go forward

9   with my argument on 971.

10          THE COURT:  That makes it a little more problematic.

11  And while you are all both arguing, my question is going to be

12  to both of you, should I exercise my discretion to allow

13  discovery as to who did it at this point?

14          MR. WITTMANN:  I think --

15          MR. AARON:  Well, Your Honor, --

16          MR. WITTMANN:  -- the answer to that question is, I

17  think not, because what we have got to deal with here is what's

18  pled in the pleadings.

19          THE COURT:  Okay.

20          MR. WITTMANN:  That's what the Court said you are

21  going to have to look at.

22          THE COURT:  You can tell me that, too.  I mean, I am

23  going to be asking both of you all.

24          MR. AARON:  Briefly, Your Honor, the problem we have

25  is this:  When the publication went out the presumption was it

1  was B. Hood. We find B. Hood -- we sued B. Hood. He says it's

2  not me. He points to two other people. So the problem is, I

3  think if we are in search of the truth, we need to be able to

4  do some discovery to see who should really be before the Court.

5  THE COURT: Okay, I will be asking both of you that.

6  That's an issue that's interesting in this case that I haven't

7  seen any other case like it from that standpoint.

8  MR. WITTMANN: It is a different twist. I think the

9  facts as you related them initially this morning I think are

10 especially correct, that Ms. Mitchell blames her loss in the

11 judicial election by less than 300 votes she lost by, on a

12 postcard distributed to the voters the day before the runoff

13 election for the Algiers City Court race. And that postcard

14 referenced an incident in which the police were called to her

15 home and for which Ms. Mitchell received a summons for battery

16 committed upon Valerie Bracy, her husband's ex-wife. These

17 documents are attached by Special Motion to Strike, and I have

18 printed a copy for Your Honor, just three documents: Exhibit

19 1, the postcard; Exhibit 2, the police report; Exhibit 3, the

20 summons. It is easier to read if we get to, won't have to read

21 any of those particular documents.

22 (COUNSEL WITTMANN HANDS DOCUMENTS TO THE COURT)

23 MR. WITTMANN: The 971 Special Motion to Strike is

24 found in the Louisiana Code of Civil Procedure, Your Honor.

25 THE COURT: Yes.

1        MR. WITTMANN:  It's substantive in nature, and it

2  applies in Federal Court sitting in diversity as found by the

3  Fifth Circuit in <u>Henry v. Lake Charles American Press</u>.

4        THE COURT:  I think that's right.  I think it is

5  certainly substantive in part, no question about it with the

6  attorney's fees.  And I think that the case you cited in the

7  Fifth Circuit to me, it glosses over it pretty well.  They

8  don't really specifically say they have jurisdiction, but it

9  seems to me that any fair reading of <u>Henry</u> would indicate that

10  there is a feeling that the Court has jurisdiction over it.

11        It is also stated by Judge Barbier in his case, the

12  Louisiana Crisis Assistance Center case, so I think that I have

13  jurisdiction over it.

14        MR. WITTMANN:  And there are two factors, Judge, to

15  consider in determining whether Article 971 can be brought in a

16  case.  The first factor is, does the cause of action arise out

17  of the exercise of free speech?  And the second is whether the

18  speech relates to a public issue or an issue of public concern?

19        THE COURT:  Well, that's read broadly, but the

20  statute says a cause of action.  You agree with that.  It has

21  got to be a cause of action, mainly a suit against a person.

22  And I guess person is defined broadly -- corporation -- arising

23  from any act of that person.  That's what the plaintiff says in

24  furtherance of that person or the person's right of free

25  speech.

1    They take the position that the third-party defendant

2 is not the person who is being sued so that they don't have the

3 standing to bring the suit.   You say the speech is the issue;

4 they say the person who makes the speech.

5    MR. WITTMANN:  That's right.  And I think in

6 answering that first question you have to look at the Complaint

7 and see what the Complaint actually alleges.  And the Courts

8 consider the allegations from the face of the plaintiff's

9 Complaint, which is what the Court in Henry v. Lake Charles

10 American Press did.  If you look at Ms. Mitchell's complaint,

11 she admits that her cause of action arises from the exercise of

12 free speech, because she has alleged that Mr. Hood has abused

13 his right of freedom of expression under the Louisiana

14 Constitution.  So it is clearly a statement in the complaint

15 itself that sets up the first test.

16    THE COURT:  But Hood could make the claim.  There is

17 no question about that.

18    MR. WITTMANN:  That's correct.

19    THE COURT:  They take the position that the third-

20 party defendant can't stand in Hood's shoes and make the claim.

21    MR. WITTMANN:  We say Rule 14 says otherwise.  We

22 will come to that in just a minute, Judge.

23    Ms. Mitchell also admits that the speech complained

24 of the political postcard, is related to a public issue,

25 because it was published in connection with a judicial

1    campaign.  So I think we meet the test, at least Mr. Hood meets

2    the test of Article 971.

3          So, Judge Trahan's prima facie burden as the movant

4    is met on the face of the Complaint itself, which fits squarely

5    within Article 971 of the Code of Civil Procedure, which is the

6    anti-SLAPP law.

7          Article 971 then shifts the burden to Ms. Mitchell to

8    demonstrate a probability of success on the merits.  That

9    requires Ms. Mitchell to provide evidence of sufficient quality

10   and quantity to demonstrate that she will be able to meet her

11   burden at trial.  Otherwise, the case should be dismissed at

12   this stage.

13         Turning to Ms. Mitchell's burden, her complaint and

14   opposition demonstrate why she can't meet that burden for

15   either her abuse-of-rights claim or her invasion-of-privacy

16   claim.

17         We also contend, as Your Honor knows from our briefs,

18   that Ms. Mitchell has made a disguised claim for defamation,

19   because the very thing she complains about, damage to her

20   personal, professional and political reputation, meet the

21   definition of damages for a defamation claim.  If Ms. Mitchell

22   has made such a claim, she can't meet the burden to demonstrate

23   the probability of success on that claim either.

24         First, I would like to address the abuse-of-rights

25   claim because that was the basic claim asserted in the

1    Complaint.  And Ms. Mitchell has denied making a defamation

2    claim, so let's deal with the claim she has made not with the

3    one she has not made.

4             As to the abuse-of-rights claim, Judge, those cases

5    are rare and have been granted in very limited circumstances.

6    That's because the claim of abuse-of-rights renders

7    unenforceable otherwise protected rights.  Louisiana law only

8    recognizes abuse-of-rights claims in the context of alleged

9    contractual or fiduciary relationships, and that is the

10   Cottonport Bank case that we cited in our memorandum, Your

11   Honor.  Although Ms. Mitchell adopts Mr. Hood's denial of the

12   allegations in her Complaint in an effort to allege abuse-of-

13   rights, she argues that she does not know Mr. Hood and thus, he

14   could have no legitimate motive for authoring or authorizing

15   the postcard.  So on the face of her pleadings she admits she

16   can't prove the very first point in making an abuse-of-right

17   claim against Mr. Hood.

18            She can't have it both ways it seems to me, Your

19   Honor.  But her argument on the lack of motive undercuts the

20   essential element of a contractual or fiduciary relationship.

21   So she can't meet her burden to prove a probability of success

22   on the abuse-of-rights claim.

23            Furthermore, the plaintiff does not provide the Court

24   with any case in which an abuse-of-rights claim was

25   successfully pled in a case involving a protected political

1   speech.  So they have no authority for asserting an abuse-of-

2   rights claim against Mr. Hood.

3           Let's turn to the invasion-of-privacy claim.  Ms.

4   Mitchell's second enumerated cause of action arises from her

5   claim of invasion-of-privacy, but she alleges no form of

6   invasion-of-privacy recognized in the State of Louisiana.  As

7   we briefed, Your Honor, Louisiana recognizes only four types of

8   privacy, and the dissemination of address, birth date or

9   driver's license number of a person is not a form of invasion-

10  of-privacy recognized by the Court.  Those categories of

11  information are public and were derived from public records.

12  Ms. Mitchell's Complaint simply has not stated a cause of

13  action for an invasion-of-privacy, and she wouldn't be able to

14  succeed at trial on the merits of that claim.

15          The opposition by Ms. Mitchell that she filed now

16  claims that her invasion-of-privacy is for false light and is

17  based on the alleged false statements contained in the

18  postcard.  But the opposition does not include any facts or a

19  single statement of law to support her false light invasion-of-

20  privacy claim.  The conclusory statement surely can't do what

21  the Louisiana Legislature had in mind when it required the

22  plaintiff to establish a probability of success to the claim.

23  So the additional invasion-of-privacy claim should be stricken

24  as well.

25          Just a moment, Your Honor, on the defamation, finally

1  that our opening brief suggested to the Court that Ms.

2  Mitchell's claim is actually a defamation cause of action.

3  The opposition by Ms. Mitchell denies that she has

4  made any such claim.  If that's true, then she certainly can't

5  establish the probability of success on a claim she has not

6  raised with this Court.  The Court should strike the

7  defamation-based remedies which Ms. Mitchell seeks.

8  But if the Court finds that she has made a defamation

9  claim, it should nonetheless be stricken.

10  I will address briefly the merits of that argument in

11  the off chance that Ms. Mitchell has changed her mind and is

12  now claiming a defamation suit.  A cause of action in

13  defamation requires proof of four elements:  The defamatory

14  statement, an unprivileged publication, falsity, malice and

15  injury.  Because Ms. Mitchell was a public figure, a political

16  candidate, the law considers her to be a public figure.  A

17  judicial election is certainly a matter of public concern.

18  Therefore, Ms. Mitchell must prove every single one of the five

19  elements of her defamation claim to succeed.

20  Turning to the first, truth is an absolute defense to

21  defamation.  Ms. Mitchell can't establish that the statements

22  contained in the postcard were false.  Ms. Mitchell does not

23  deny that the information is taken from the New Orleans police

24  report and the summons, that you can see from the police report

25  itself that we handed up to Your Honor, that it is a very

1  extensive police report.  It runs on for pages.  You don't

2  often see police reports like that.  Ms. Mitchell's own

3  affidavit admits that she had a physical altercation with Ms.

4  Bracey, who was pregnant at the time.

5        Now, the postcard may well contain some hyperbolic

6  statements, but that's not enough to prove that they were

7  false.  When we cited Your Honor to the Milkovitch case out of

8  the United States Supreme Court talking just about that issue.

9  Turning to the actual malice, as a public official, Ms.

10  Mitchell must demonstrate that Mr. Hood acted with actual

11  malice.  She doesn't even attempt to address the heightened

12  standard.  But even if she did, she would have to show that the

13  creator of this postcard had knowledge that the statements were

14  false, even though they relied on the public records, for

15  recklessly disregard whether the statements were false.  Actual

16  malice is not shown by evidence of ill-will or malice in the

17  ordinary sense of the word.  Actual malice has been found where

18  a story has been fabricated, and that is not the situation in

19  this case.

20        I refer Your Honor to the Estiverne case, which we

21  cited in our brief.  The Court found no actual malice because

22  the defendants relied on public records when it created the

23  publications.  Likewise, Ms. Mitchell has not demonstrated that

24  anyone acted with actual malice when the statements on the

25  postcard are drawn directly from the police report and the

1    summons.

2          Turning to injury, finally, Your Honor, Ms. Mitchell

3    can't show any injury.  The case of Lamz v. Wells has a very

4    similar fact pattern to the case presented in this Court.  That

5    involved an election in the Slidell City Court.  And in that

6    case Mr. Lamz, a judicial candidate, brought a defamation

7    action against his opponent after a heated and controversial

8    judicial election which he won by less than 200 votes.  Lamz

9    claimed that campaign literature distributed by his opponent,

10   Mr. Wells, was defamatory.  The Court found that Lamz' claim

11   rested or related to campaign literature distributed by Mr.

12   Wells, which was an act in furtherance of his right to free

13   speech.

14         The burden then shifted to Mr. Lamz to establish a

15   probability of success on his claim.  He was not able to do so

16   because he could not show the publications were false, and he

17   could not show any injury as a result of the campaign

18   literature had not been distributed.

19         So here, Ms. Mitchell has made nothing but conclusory

20   statements in her Complaint that her reputation has been

21   damaged as a result of the postcard.  But that's not enough to

22   establish damages in a defamation suit.  Those conclusory

23   statements regarding her alleged injury won't defeat an Article

24   971 motion.

25         In the case of Kirksey v. New Orleans Jazz & Heritage

1  Foundation, which is also cited to Your Honor, the Court said

2  the plaintiff's self-serving affidavit that his reputation has

3  been damaged, and he had suffered mental anguish, did not

4  establish the damage elements of a defamation claim.  So the

5  plaintiff's inability to prove damages in itself is a

6  sufficient basis to granting a motion to strike under Article

7  971.

8         Finally, let me get to the standing question which

9  has been raised by counsel opposite.  The opposition filed by

10  Ms. Mitchell questions whether Judge Trahan had standing to

11  assert Article 971 as a defense.  But as long as Judge

12  Anderson-Trahan is a third-party defendant in this matter, she

13  can raise any defenses that Mr. Hood does assert to the

14  Complaint.  Rule 14 is clear on this point, and Ms. Mitchell's

15  suggestion to the contrary simply is unfounded.  Indeed, Mr.

16  Hood in his reply argues that Judge Anderson-Trahan is solely

17  responsible for the political postcard.  In the face of that

18  claim, Judge Trahan clearly has standing to assert the Article

19  971 defense.  She can assert any defense that could be asserted

20  by Mr. Hood.

21         THE COURT:  They take the position that the cause of

22  action does not arise, not the defense, the cause of action

23  against the person arising from any act of that person.  They

24  say that is not an act of that person; therefore, the cause of

25  action does not arise.  It is not a question of a defense as

1    much as it is a question of an abortion of the cause of action.

2           MR. WITTMANN:  But again, we are not trying the

3    merits of the case.  We are trying the case presented by the

4    pleadings, which is a case in which the plaintiff has accused

5    Mr. Hood of having been the creator of this postcard that was

6    circulated prior to the election and in which Mr. Hood has

7    claimed that Judge Trahan is solely responsible for it.  And

8    that's the basis for this third-party demand.  So we are

9    looking at a situation in which based on the pleadings

10   themselves, with the Court has indicated in the Henry case, the

11   Court should do on the face of the pleadings themselves, then

12   the Article 971 motion should be granted.

13          THE COURT:  Okay, I understand your position.  Let me

14   hear from your opponent.

15          MR. AARON:  One of the good things about practicing

16   in Louisiana is that the Legislature gives you guidance, and

17   the Louisiana Supreme Court gives you guidance.  And I did not

18   have the opportunity to do a surreply, but were I able to, I

19   would reference the Court to a Louisiana Supreme Court case

20   called City of Baton Rouge v. Junka.  That's at 794 So.2d 766.

21   It is a 2001 case.  And it states the long-standing principle

22   enunciated by the Louisiana Supreme Court is that where you

23   have a special statute that is in derogation of common rights

24   such as this statute, it is in derogation of common right to

25   sue someone, then it must be strictly construed.

1    Next thought:  Article 9 of the Louisiana Civil Code

2  tells us that if a statute is clear and unambiguous we

3  interpret it literally.  We do not expand upon the wording of

4  it.  With those two principles of guidance in mind, Your Honor,

5  one from the Legislature and one from the Louisiana Supreme

6  Court, I say we look directly at the language of the statute,

7  and we strictly construe it.  And if we strictly construe 971,

8  the only person who can bring an anti-SLAPP motion is a person

9  asserting the use of First Amendment rights or the right to

10  petition.

11    Now, Hood has said he did not do it.  Our problem was

12  when we came into Court our assumption was the person whose

13  name was on the postcard was the one who did it.  That's who we

14  sued.  Now, what is unveiling is apparently a conspiracy my

15  opponent says that we have let Hood off the hook -- we have

16  not.  Hood has said that, well, I was asked to be a reference

17  if ever called.  That's his role in the conspiracy.  So what I

18  suggest to the Court is, even though he may not have been

19  involved with putting together the mail-out, he was a player in

20  this drama.  And his role as he admits was to give a reference

21  for Judge Trahan, a person he never met, okay.

22    Now, the statute clearly says that you must be a

23  person who asserted the First Amendment right and is being

24  sued.  Got a problem here.  Judge Trahan is not being sued.

25  Judge Trahan has not filed an answer.  She does not have to

1    file an answer for another 30 days.

2            So we are left here with this dilemma where she is

3    saying that the statute means anybody's First Amendment right,

4    does not have to be hers.  And then she has the luxury of 30

5    days from now embracing or not embracing whether it is her

6    speech.

7            McClinton has not said it is his speech.  Hood has

8    clearly said it is not his.

9            Now, let's look at the Rule 14 argument.  What they

10   are basically trying to do is read something into 971 that the

11   Louisiana Legislature obviously did not contemplate.  They did

12   not contemplate reading 971 imparmateria with Rule 14.  The

13   purpose of Rule 14 is to say if a defendant fails to make a

14   defense, the third-party defendant will not be punished by

15   that, and that third-party defendant can come in and raise that

16   defense.

17           Look what we have here.  The impleader is actually an

18   improper impleader.  Instead of Mr. Hood saying if I am liable

19   to Ms. Mitchell, then these other people are liable to me for a

20   defense for contribution or for indemnity.  His pleading

21   doesn't say that.  What he does is launches on a completely

22   different cause of action against McClinton and against the

23   Judge.

24           And so I suggest to Your Honor that because he is

25   stating new causes of action, the Judge is not really a true

1    third-party defendant.  So the argument that they contend,

2    stepping in the shoes, really doesn't apply when you look at

3    what the purpose was to Rule 14.  And in our papers we not only

4    cite to the case law dealing with Rule 14, but also the notes

5    that describe what is the purpose of Rule 14.

6              Now, obviously we have a burden-shifting situation

7    here. I respectfully suggest to the Court that before you even

8    get to whether or not my client can win on the merits, Judge

9    Trahan has to be able to prove that they, in fact, have

10   standing, that they are a person within the ambit of the

11   statute we are talking about.  My mother used to use the

12   phrase, listen with the third ear.  Well, when I was a child,

13   what is she talking about?  We only have got two ears.  What my

14   mother meant was listen to what they are not saying.  Nowhere

15   in here are they saying that there is case law supportive of

16   this proposition that somehow a third-party defendant can come

17   in, not admit that it was their speech, but somehow use 971 to

18   defeat a cause of action.

19             Now, the purpose of 971 is to avoid a chilling effect

20   on the exercise of First Amendment rights.  I'm a

21   constitutional lawyer.  I don't have a problem with that.  I

22   understand that.  But the problem is this:  Not all speech is

23   protected.  And where you have speech that involves the

24   commission of a Federal crime, mail fraud, identity theft and

25   more than likely if we could do some discovery, wire fraud,

1  that speech is not protected.

2  Mr. Wittmann suggests with respect to the causes of
3  action that we can't prove anything because basically his
4  client or whoever is basically taking public information.
5  That's not true. What they are taking is public information,
6  adding opinion and adding distorted truths. The incident
7  itself is set forth in the affidavit that we have from the
8  persons involved, Ms. Bracy and Ms. Mitchell. And what they
9  describe and what the postcard describes are completely
10 different events.

11 Now, the postcard describes the activity as vicious,
12 okay, as knocking people to the ground, okay. Now, it is not
13 just hyperbole as Mr. Wittmann would suggest. What you have
14 here is a complete distortion of the facts, and you have a
15 mail-out that goes out having people in Algiers believing,
16 having people in Algiers believe that a person in Washington,
17 D.C., okay, has looked at this matter and has weighed in on
18 whether or not Ms. Mitchell should be a judge.

19 Now, the anti-SLAPP statute in Louisiana is almost
20 verbatim to the statute in California. As we note in our
21 papers, in California they have taken a look at this far more
22 regularly than we have here. And in California they have
23 basically come up with an illegality exception which basically
24 says that you may be exercising your First Amendment rights,
25 but if you go beyond the pale and you engage in speech that is

1  untruthful, that is fraudulent, etc., then you will be estopped

2  from asserting an action under 971.

3       Now, I go back to my opening remarks, Your Honor.

4  Nine-seven-one (971) is in derogation of common rights.  You

5  have a common right to file a lawsuit -- this says you can't.

6  And I respectfully suggest to Your Honor that since we are

7  talking about a matter of State law, the guidance should come

8  from the Louisiana Supreme Court.  And the Louisiana Supreme

9  Court has consistently said where you have a special statute

10  that is in derogation of common rights, it must be strictly

11  construed.  If you strictly construe 971, the only outcome is

12  to agree with my position and not Mr. Wittmann's.

13       THE COURT:  Well, let me just in that regard there is

14  a legislative intent that is expressed in 971.  I know that

15  there is a question always of whether or not there is any

16  intent in the Louisiana Legislature, but it is stated that the

17  Legislature finds and declares that it is in the public

18  interest to encourage continued participation in matters of

19  public significance, and that this participation should not be

20  chilled through an abuse of the judicial process.

21       To this end, it is the intention of the Legislature

22  that the article enacted pursuant to this act shall be

23  construed broadly.  That's what they say is their intent, so

24  that's what I think the defendant would point, the third-party

25  defendant would point to.

1     MR. AARON:  And I would want to address that.  The

2  problem here, though, Your Honor, is that even though the

3  Legislature may say interpret it broadly, the entity that

4  ultimately would interpret this would be in the State Court,

5  would be the State Supreme Court.  And the State Supreme Court

6  has enunciated a principle of statutory construction.  And so I

7  would suggest that if the Legislature has let's say cast a

8  blind eye to that, I think the Supreme Court would say, well,

9  wait now.  We say we have certain fundamental principles here.

10  But even if you construe it broadly, Your Honor, you don't go

11  beyond the wording that the Legislature had.  And the

12  Legislature could have said where there is an exercise of a

13  First Amendment right by anybody, okay, an anti-SLAPP motion

14  can be filed.  It did not say that.  And by the very fact that

15  it uses the word person three or four times in one short

16  paragraph, I think suggests that the Legislature clearly

17  intended it to mean you have to come in and show that your

18  First Amendment rights are being chilled, not somebody else.

19     Now, here is the deal, Judge.  We don't know yet who

20  all the players in this drama are.  With a bit of discovery we

21  might find out, and someone may well come in and say, Judge, it

22  was my exercise of First Amendment rights.  When that person

23  comes along, Your Honor, then I think we can address anti-

24  SLAPP.  But I think at this juncture it is clearly premature.

25     Now, let's look at all of Mr. Wittmann's arguments

1    about you can't prove this, you can't prove that or whatever.

2    Well, let's just look at defamation.  <u>Solomon</u> clearly says if

3    you are a public figure you must show actual malice.

4            THE COURT:  Right.

5            MR. AARON:  Well, until we are able to depose who

6    supposedly said it, how do I know whether or not it was malice?

7    Okay, it is kind of a chicken and an egg.  So the question is,

8    is the purpose of anti-SLAPP to avoid a chill on First

9    Amendment rights, or is it an opportunity to in case in

10   darkness, if you will, the truth that should come out?  And

11   what I respectfully suggest to this Court is that the movant

12   does not satisfy the requirements of the statute.  Somebody,

13   somebody might be able to.  At this point no one has stepped

14   forward to embrace.

15           Now, let's look at it.  In Louisiana there are

16   special rules dealing with persons running for judge.  One of

17   the basic rules is that if you are running for judge in

18   Louisiana you can't say anything false about your opponent.  If

19   you do, you then have to deal with the Judiciary Commission

20   which has jurisdiction not only over judges already elected,

21   but also those seeking to be judges.

22           So that being the case, then for Judge Trahan to come

23   in and say I did it, opens a door with respect to the Judiciary

24   Commission.  So I doubt seriously we will ever hear her say she

25   did it.

1          What I think is going to happen, though, if we are

2     allowed to do some discovery, Judge, is that people are going

3     to point fingers.  And at some point somebody is going to rat

4     out who actually did this.  And at that point in time if that

5     person wants to assert anti-slap, fine.  But I am saying at

6     this juncture, we don't have anybody embracing and owning up to

7     the speech.  And so at this point there is really nothing to

8     slap.

9          THE COURT:  Right.  Let me hear a response.  I hear

10    you.  Why isn't counsel correct on that issue from a discovery

11    standpoint?

12         MR. WITTMANN:  I'm sorry, I didn't hear Your Honor.

13         THE COURT:  Why isn't he right about the fact that

14    this may be premature, and that more discovery is needed about

15    who said what?

16         MR. WITTMANN:  We are here, Your Honor, looking at

17    the pleadings that have been filed in the case is what the

18    Fifth Circuit said you should do in the Henry case.  And I

19    thought I was here really dealing with an abuse-of-rights claim

20    or maybe a defamation claim, if you took my view of what she is

21    really asserting.

22         But let's treat it as an abuse-of-rights claim, since

23    they have denied that they are really asserting a defamation

24    claim.  And now I hear Mr. Aaron get up here and tell Your

25    Honor, well, we have really got a conspiracy claim here.  Well,

1 Your Honor, a conspiracy claim requires a specific allegation

2 that they haven't made.  They can't come in here on oral

3 argument and expand their pleadings and come forward and

4 present the Court with a cause of action that they have not

5 pled, no one has pled.

6    And it seems to me, Your Honor, that we have got to

7 go back to what the basic Horn Book Law is:  You have got to

8 deal with the card you are dealt.  And the cards we were dealt

9 with an abuse-of-process claim and arguably a defamation claim

10 and an invasion-of-privacy.  So the same thing is true of the

11 election laws that are allegedly violated.  There is no right,

12 no cause of action for a violation of election laws pled in

13 this case at this point, none whatsoever.  Just hasn't been

14 alleged.

15    Mr. Aaron makes a point that Judge Anderson-Trahan

16 has not been sued.  That's a decision they made.  Why they

17 didn't sue her I don't know.  She was the opponent in the

18 election.  If, indeed, Judge Trahan were the author of this

19 postcard, we are going to still be right back here under

20 Article 971 if that proves to be the case.  So it doesn't

21 change the fact that they have not sued the person that they

22 now claim is responsible for the postcard.  If they believe she

23 is responsible for it, they should have sued her; they didn't

24 do it.

25    I think that insofar as the illegality exception that

1 counsel referred to such an exception has never been recognized

2 by the Louisiana State Courts.  Although Ms. Mitchell makes all

3 sorts of claims in her opposition against Judge Anderson-

4 Trahan, she has not officially alleged these claims in any

5 direct action against a third-party defendant.  And the

6 illegality alleged has no relationship to Ms. Mitchell.  Any

7 fraud claim belongs to Hood on the voters in the district of

8 the Second City Court of Algiers.

9 　　　　　One final point, Your Honor:  Mr. Aaron made good

10 points about construing the statutes as they are written and

11 taking them as they are, and looking at the four corners of the

12 statute.  Well, I think you should look at Rule 14.  There is

13 nothing nominal about Rule 14 of the Rules of Civil Procedure.

14 The rule explicitly states that third-party defendants may

15 assert any defense to the main demand by stepping into the

16 shoes of the main defendant.  That's what we have done here.

17 We are entitled to assert all of the defenses we have accepted

18 under Article 971, Your Honor.

19 　　　　　THE COURT:  Okay, I will write something on it.  But

20 let me tell you how I feel about it.  I think that the statute,

21 that 971 clearly says a cause of action against a person

22 arising from any act of that person in furtherance of the

23 person's right to free speech basically.  The issue in this

24 case is who made the speech?  Who said it and who authorized

25 it?  And it is not clear at this point.

1          Now, I understand that under (d) of the statute all

2     discovery proceedings in this action shall be stayed upon the

3     filing of a notice of motion made pursuant to this Article.

4     The stay of discovery shall remain in effect until notice of

5     entry of the order ruling on the motion.  Notwithstanding the

6     provision of this paragraph, the Court on notice motion and for

7     good cause shown may order that specific discovery be

8     conducted.

9          Counsel makes the motion to conduct discovery as to

10    who made the statement, who was authorized to make the

11    statement and the specifics of the statement.  It seems to me

12    that that's good cause in this particular case.  So what I'm

13    going to do is, I will write something so that you all can see

14    it, because as I read the cases the party has an appeal of that

15    decision.

16          MR. WITTMANN:  Right.

17          THE COURT:  So you ought to at least know the scope

18    of my ruling.  But basically, I am going to give you all a

19    period of time to take discovery to find out more about this,

20    the specifics matters.

21          MR. AARON:  Thank you, Your Honor.  Before you move

22    to my opponent, I did want to make one point on the subject of

23    abuse of rights.  Mr. Wittmann has suggested that you can only

24    have an abuse-of-rights case in Louisiana arising out of a

25    contractual situation or a fiduciary situation.  I disagree

1  with that, and I can point the Court to the case of Gilbert v.

2  Tulane University of Louisiana.  It is at Westlaw 4550336.

3  Judge Engelhardt handled that case in 2011.  And basically, it

4  recognized that you could have abuse of rights in the delictual

5  context.  In fact, he allowed the parties to go back to prove

6  that they were, that prescription had not run.

7          The Middle District has done the same thing.  Judge

8  Johnson in the Middle District in the case of White v. State

9  Farm Mutual.  That's at Westlaw 4318892.

10         THE COURT:  Yes, I really do think that this is more

11 of a delictual issue than a contractual issue.  I am familiar

12 with those cases.  So at this point I am taking it under

13 advisement.  But I'm going to be coming out with that opinion

14 so that you all can see it and deal with it as you may wish to

15 deal with it.  I am going to try to be specific on the

16 discovery.  I cannot, as I read the (d) you do not say go out

17 and take discovery.  So I really want to know -- I want the

18 discovery to be focused on who made the statement, who

19 authorized the statement, what the statement was, things of

20 that nature, dealing with the statement.  Okay, thank you very

21 much.

22         MR. AARON:  Thank you, Your Honor.

23         MR. WITTMANN:  Thank you, Judge.

24         THE COURT:  Appreciate you all very much.

25      (HEARING ON THE MOTION CONCLUDES AT 11:18 A.M.)

1    <u>REPORTER'S CERTIFICATE</u>

2         The undersigned certifies, in his capacity as

3    Official Court Reporter, United States District Court, Eastern

4    District of Louisiana, the foregoing to be a true and accurate

5    transcription of his stenograph notes taken on the 16th day of

6    April, 2014.

7         New Orleans, Louisiana, this 7th day of May, 2014.

8

9                        /s/  DAVID A. ZAREK
                         DAVID A. ZAREK
10                       OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25