UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KIANA AARON MITCHELL** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 13-5875** |
| | * | |
| **BRETT HOOD** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court are four Motions to Dismiss for Lack of Jurisdiction filed by subpoenaed non-parties to the case at bar. R. Docs. 118, 121, 125, and 128. The Court has reviewed the briefs and the applicable law, and now issues this Order & Reasons.

**I.   BACKGROUND**:

This case involves a run-off election between Plaintiff Kiana Aaron Mitchell and Judge Ernestine Teena Anderson-Trahan for Second City Court Judge for the City of New Orleans, which took place Saturday, December 8, 2012. Specifically, this case pertains to a negative campaign postcard mailed to Algiers residents before the run-off election, which accused the Plaintiff of assaulting a pregnant woman. The campaign postcard indicated that it was "[p]aid for by B. Hood," and listed a Washington, D.C., address as the return address. An investigation revealed that the named individual, Brett Hood, resided at the address referenced in the postcard.

On September 19, 2013, Plaintiff filed a complaint against Defendant Brett Hood ("Hood") seeking damages for "falsely attacking [Plaintiff's] fitness for public service and revealing personal information about [Plaintiff] in a manner that was injurious to [her] personal, professional and political reputation . . ." R. Doc. 1. Mitchell also avows that she is entitled to damages for invasion of privacy generally. R. Doc. 1 at 11. Hood filed an answer denying the allegations and subsequently moved to amend his answer to add a third party complaint, naming

1

Kelvin P. McClinton ("McClinton") and Judge Trahan, Plaintiff's opponent in the Second City Court judicial race, as third party defendants to the suit. In the third party complaint, Hood asserts claims against McClinton and Judge Trahan of fraud, misrepresentation, abuse of right, identity theft, and injuries to his personal and professional reputation for placing his name on the mailer without his permission. In turn, on March 17, 2014 Plaintiff amended her complaint naming McClinton as an additional defendant.   R. Doc. 30.

On March 24, 2014, Judge Trahan filed a motion to strike Plaintiff's complaint in accordance with Louisiana Code of Civil Procedure article 971 and award attorney's fees because Plaintiff did not meet her burden of establishing a probability of success on the merits. The Louisiana Code of Civil Procedure Article 971.2 provides that a cause of action relating to the exercise of an individual's right of free speech "in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established a probability of success on the claim." Judge Trahan argued that this Court should strike the Plaintiff's complaint because Plaintiff failed to establish that a contractual or fiduciary relationship exists with respect to her abuse of right claims. Alternatively, Judge Trahan argued that this Court treat Plaintiff's causes of action as defamation claims. As such, she argued that this Court should strike the complaint because the information contained in the political postcard was true.

The Court did not rule on the merits of the motion but found that more discovery was necessary to resolve the motion.   R. Doc. 60.   The Court therefore ordered the parties to conduct additional discovery on the issue of who made the statements on the postcard and who authorized the postcard.   R. Doc. 60 at 6.   Judge Trahan filed a motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which the Court granted on May 2, 2014.   The Fifth Circuit

2

issued a *per curiam* opinion on June 4, 2015, finding that Judge Trahan could not be properly impleaded into the case under Federal Rule of Procedure 14. Specifically, the Fifth Circuit held that Hood's claims against Judge Trahan are not contingent upon Mitchell's claims against Hood because whether Mitchell proves that Hood made defamatory statements in the postcard does not govern Hood's claims against Judge Trahan. The Fifth Circuit remanded the case back to this Court and ordered the Court to dismiss Judge Trahan.

Over the course of the litigation, Mitchell has made statements regarding Hood's potential liability on the merits. Mitchell included a declaration by Hood as an exhibit in Mitchell's response to Judge Trahan's 971 motion. R. Doc. 53-1. Mitchell then made statements regarding Hood's position that Hood did not author any of the statements contained in the postcard. *See, e.g.*, R. Doc. 53 at 10 ("Hood has never claimed that the statements contained in the Postcard are his—in fact he has outright denied making them."). Notably, Mitchell has argued before this Court that "Hood Did Not Commit An Act in Furtherance of His Right to Free Speech." R. Doc. 53 at 9.

Upon remand, this Court dismissed the defendant's impleader and proceeded with the case. R. Doc. 90. The Plaintiff noticed depositions of various non-litigant witnesses and had subpoenas issued for their attendance.

## II. PRESENT MOTIONS

There are four separate motions to dismiss for lack of subject matter jurisdiction filed in this case. R. Docs. 118, 121, 125, 128. Each of the motions is filed by one of the parties currently subject to a subpoena: Jacques Morial, Ernestine Anderson-Trahan, Tamara Griffin-Major, and Lillian Dunn. The movants' arguments are largely in accord. Each movant contends that this Court lacks subject matter jurisdiction because there is no real case or

controversy between Mitchell and Hood. To support this position, movants argue that: 1) parties subject to a subpoena have standing to attack subject matter jurisdiction; 2) Mitchell extinguished any case or controversy when she judicially adopted Hood's defenses; and 3) Mitchell cannot meet the sufficient amount in controversy for diversity jurisdiction.

### A. Movants' Motions to Dismiss for Lack of Subject Matter Jurisdiction

Movants argue that they are entitled to attack this Court's subject matter jurisdiction on the grounds that a court without jurisdiction cannot issue a valid subpoena. *See, e.g.*, R. Doc. 118-1 at 5. Movants cite Supreme Court and district court case law, both of which suggest that "the subpoena power of a court cannot be more extensive than its jurisdiction." *United States Catholic Conf. v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988); *Billings v. Aeropres Corp.*, 522 F. Supp. 2d 1121, 1130 (E.D. Ark. 2007) ("If a court does not have subject-matter jurisdiction, it cannot issue subpoenas, even to non-party witnesses."). Movants also contend that a subpoenaed non-party has standing to assert a motion to dismiss for lack of subject matter jurisdiction. R. Doc. 118-1 at 5.

Turning to this Court's jurisdiction, movants rest their motions to dismiss on Article III's case or controversy requirement for a federal court proceeding. R. Doc. 118-1 at 6–7 (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987). Movants argue that Plaintiff Mitchell judicially admitted in proceedings before this Court and the Fifth Circuit that Hood is not liable to her in. R. Doc. 118-1 at 6–7. Movants reference the five-prong test for a judicial admission, and cite specific pleadings by Mitchell that allegedly qualify as judicial admissions. R. Doc. 118-1 at 6–7.

Movants quote Mitchell's pleadings and suggest that Mitchell conceded that Hood was not responsible for the campaign postcard. Movants further argue that Hood engaged in no

4

speech. R. Doc. 118-1 at 6. Movants then contend that if this Court finds that Mitchell judicially admitted that Hood committed no injury to Mitchell, this Court must void its subpoenas and dismiss the case for lack of subject matter jurisdiction. R. Doc. 118-1 at 7–9.

The motions of Major and Dunn largely repeat and adopt the preceding arguments. Movant Trahan, however, presents one additional argument—Trahan contends that Mitchell cannot present evidence that she meets the $75,000 jurisdictional minimum. R. Doc. 121-2 at 7. Trahan notes that the loss of political office has never been recognized as a compensable property right. R. Doc. 121-2 at 8. Trahan then asserts that Mitchell's claims for "injury to professional reputation," "injury to personal reputation," and "injury to political reputation" cannot reach the $75,000 limit. Trahan claims that no precedent exists for the award of reputational damages under the "abuse of rights" cause of action. Trahan does not address Hood's claims for invasion of privacy pursuant to the "abuse of rights" cause of action.

### B. Mitchell's Response

Mitchell timely responds. R. Doc. 140. Mitchell contests movants' argument that the statements at issue are judicial admissions. Mitchell notes that all of the statements cited by movants were given in regards to Trahan's Article 971 motion. R. Doc. 140 at 2–8. Mitchell cites briefs provided by both parties, noting in particular that the Fifth Circuit was presented with this argument. R. Doc. 140 at 3–5. Mitchell then characterizes her citations to Hood's theory of the case as evidentiary admissions, and argues that evidentiary admissions do not have the same preclusive effect as judicial admissions. R. Doc. 140 at 6–8.

Mitchell denies movants' assertion that no live case or controversy exists. Mitchell contends that Hood "played a role," in the attack on Mitchell, and that this position is sufficient to create an adversarial conflict for purposes of Article III's case or controversy requirement. R.

Doc. 140 at 8. Mitchell also argues that many of the movants' cited examples of collusion are truly adversarial in nature. R. Doc. 140 at 9–11.

Lastly, Mitchell asserts that the case at bar meets the $75,000 amount in controversy requirement for subject matter jurisdiction. Mitchell cites defamation cases with verdicts in excess of $75,000, and argues that they are analogous to the case at bar. R. Doc. 140 at 11–12. Lastly, he argues that in essence this is a tort case seeking damages for personal injuries sustained by the plaintiff.

**III.   LAW AND ANALYSIS**

A.  The Law of Article III Jurisdiction over Cases and Controversies

Article III of the Constitution limits the jurisdiction of the judiciary to "cases" or "controversies." U.S. Const. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrylser Corp. v. Cuno*, 547 U.S. 332, at 341–42 (2006) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976). Article III demands a conflict between at least two genuinely adverse parties. *Kirkland v. New York State Dep't of Correctional Services*, 1988 WL 108485, at *3 (S.D.N.Y. Oct. 12, 1988). If all parties to a lawsuit desire the same result, no case or controversy exists, and the court should dismiss for lack of subject matter jurisdiction. *Moore v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 47, 47 (U.S. 1971); *see also Kirkland* 1988 WL 108485, at *3 ("The Court must dismiss a case where the cooperation of the plaintiff and the defendant might adversely affect the rights of outsiders if the question of law is decided in the manner that both of the parties desire.")

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs challenges to a court's

subject matter jurisdiction.   A court must dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."   *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).   A Court should grant a motion under 12(b)(1) "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."   *Id.*

### B.  Discussion

#### a.  Movants' Standing to Raise Subject Matter Jurisdiction

The movants have standing to contest subject matter jurisdiction, because movants are non-parties subjected to a subpoena.   The Supreme Court held in *United States Catholic Conf. v. Abortion Rights Mobilization, Inc.* that a non-party subject to a subpoena may attack a contempt order for failure to comply with the subpoena by contesting the court's subject matter jurisdiction.   487 U.S. 72, 76 (1988).   Courts in the wake of *Catholic Conference* have expanded this standing doctrine to allow for direct attacks on subject matter jurisdiction before the issuance of a contempt citation.   *See, e.g.*, *Dunham v. Coffeeville Resources*, 2007 WL 2403689, at *1 (D. Kan. 2007) ("[A] non-party who is served with a subpoena by a federal court can, as a part of any objection to the subpoena, raise the court's lack of subject matter jurisdiction, and if the court does lack subject matter jurisdiction, then the subpoena is void."); *Billings v. Aeropres Corp.*, 522 F. Supp. 2d 1121, 1130 (E.D. Ark. 2007) ("If a court does not have subject matter jurisdiction, it cannot issue subpoenas, even to non-party witnesses."); *Hous. Bus. Journal v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1213 (D.D.C. 1996). Because the motions at issue are within the purview of *Catholic Conference*, movants have standing to contest this Court's subject matter jurisdiction.

b. Analysis of the Alleged Judicial Admissions

Mitchell's statements do not constitute judicial admissions. "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001). In order for a statement to constitute a judicial admission, it must be "(1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which judgment for the opposing party can be based." *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (2001).

All of the movants' cited statements concerning Hood were made before this Court or the Fifth Circuit in the instant litigation. Thus, the first prong of the judicial admission test is satisfied. Movants' cited statements also satisfy the second prong of the judicial admission test: the statements are contrary to facts essential to the theory of recovery. Mitchell stated before this Court that Hood uttered no speech, and that "Hood did not commit an act in furtherance of his right to free speech." *See* R. Doc. 53 at 6, 9. Mitchell seeks to recover on grounds of injury to professional reputation, injury to personal reputation, injury to political reputation, and invasion of privacy. Each of these causes of action draws from the abuse of the freedom of expression, as defined in Article 1 of Louisiana's constitution. La. Const. Ann. art. I, § 7. Avowing that Defendant did not speak or act in furtherance of the right to speak is contrary to a position that Defendant abused his freedom of expression.

While the third prong is more difficult to evaluate, the Court finds that none of Mitchell's statements were sufficiently deliberate and clear to constitute judicial admissions. "Hood Did Not Commit An Act in Furtherance of His Right to Free Speech" appears on its face to be a

clear, deliberate, and unequivocal statement. R. Doc. 53 at 9. The Court similarly notes that Mitchell's statement that "There Is No Defense If There Is No Speech" appears without context to be a clear, deliberate, and unequivocal statement. R. Doc. 53 at 6; s*ee also* Case 14-30537, Document No. 00512744513 at p.32 ("These are not the statements of an individual who felt compelled to rise up from his home in Washington D.C., to inform voters of New Orleans of the qualifications of Mitchell . . . ."). But when placed in context another purpose becomes clear. The Court finds that these references do not constitute judicial admissions, because the assertions were made for the independent purpose of attacking Trahan's Article 971 standing. While Mitchell did not phrase every statement in this light, it is clear from the record that Mitchell did not intend to adopt Hood's denial of liability. Rather, Mitchell highlighted Hood's contention that he did not speak on the grounds that Article 971 standing was only available if Hood acknowledged that he spoke. *See* R. Doc. 53 at 11 ("[E]very case applying the article cited by Trahan involved a specific act taken, acknowledge and defended by the person exercising the right of petition or free speech."). As such, these statements are mere evidentiary admissions, and are not clear, deliberate, and unequivocal for purposes of a judicial admission. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001) (citing *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959). Thus, the Court need not continue its discussion of the judicial admission test outlined in *Heritage Bank*, 250 F.3d at 329, as the statements identified by movants fail *Heritage Bank*'s third prong.

      c. Inquiry into the Existence of an Adverse Legal Interest

In order for a case or controversy to be adversarial, the parties "must not desire . . . the same result." *Moore v. Charlotte-Mecklenburg Bd. Of Ed.*, 402 U.S. 47–48 (1971). Adversity of interest insures that the parties "will sharply define the issues." *Goosby v. Osser*, 409 U.S.

512, 517 (1973). Mitchell has not conceded her position through judicial admission, and the Court thus finds that an active case or controversy exists on the face of the pleadings.

However, movants additionally argue that no case or controversy exists because the matter before the Court is feigned or collusive. *See* R. Doc. 118-1 at 7–9; R. Doc. 125-1 at 2–3. Movants contend that Mitchell and Hood are in cahoots; the parties allegedly conspire to use this Court as a charter for Mitchell's discovery fishing expedition against movants. A feigned or collusive lawsuit presents no Article III case or controversy. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (noting the lack of federal subject matter jurisdiction in "friendly or feigned proceedings"). The use of this Court for a purpose besides the compensation of the plaintiff demeans the integrity of the judicial branch and violates the rights of non-parties. *See Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1213 (D.C. Cir. 1996) ("The federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others."); *Kirkland v. New York State Dep't of Correctional Services*, No. 82 CIV. 0295, 1988 WL 108485, at *3 (S.D.N.Y. Oct. 12, 1998). Thus, if movants are correct, dismissal is proper. *See Kirkland*, 1988 WL at *3 ("[T]he court must dismiss a case where the cooperation of the plaintiff and the defendant might adversely affect the rights of outsiders if the question of law is decided in the manner that both of the parties desire.").

Movants are correct to note that the relationship between Mitchell and Hood is somewhat curious. It is unusual that Hood has failed to take actions such as filing a motion for summary judgment or a motion to dismiss for lack of personal jurisdiction. It is also somewhat strange that the witness and exhibit lists filed by Mitchell and Hood are identical. *See* R. Docs. 110, 111. Hood has gone so far as to aid Mitchell at times, offering an affidavit to support Mitchell's

struggle with Trahan's Motion to Strike Complaint Pursuant to Louisiana Code of Civil Procedure Article 971. R. Doc. 53-1. But these strategic choices by Hood are not dispositive on the issue of collusion. Mitchell points out that this might be an instance of comparative fault involving a number of individuals, including Hood. The incentives created by a case of comparative fault must be considered when analyzing a claim of collusive or feigned proceedings.

Mitchell contends that she has been harmed by the mailing and distribution of a postcard with inaccurate and/or insufficient personal information to approximately 3,000 residents of New Orleans. R. Doc. 1. The name that appeared on this postcard was "B. Hood." The address that appeared on the postcard belonged to Hood. Hood has been sued. Hood alleges that he was not responsible for the postcard. As it now stands, this case is at the discovery phase, and the requirements of diversity jurisdiction are satisfied. *See* discussion *infra*, Part III.B.d. Discovery is underway to determine if Hood was responsible for Mitchell's identified injuries, in whole or in part. Mitchell has a right to subpoena non-parties to the litigation for the purpose of taking depositions. *See* Fed. R. Civ. P. 45. Non-parties may contest a subpoena pursuant to Rule 45(c)(3)(a) or by attacking the Court's subject matter jurisdiction, *Catholic Conf.*, 487 U.S. at 76. The latter method is somewhat atypical.

The Court finds that this may well be a case of comparative fault, and attributes the oddball strategic choices of Hood to the incentives created by comparative fault. In a case of comparative fault, defendants are interested in absolving themselves in whole or at least in part. Shifting the blame to a potential codefendant is an intuitive strategy for accomplishing this goal. A plaintiff in discovery is incentivized to take advantage of this "it wasn't me!" tactic by deposing the parties implicated by the defendant. Discovery will either identify the implicated

parties as plausibly at fault, or show the original defendant's finger-pointing to be disingenuous. Nothing about the strategic choice to investigate a non-party implicated by a defendant suggests that a plaintiff has foregone his or her claim against the original defendant. Defendants such as Hood remain on the hook for damages.

Thus, the Court cannot construe Mitchell's exploration of Hood's "it wasn't me!" defense as the absence of a case or controversy. Hood's name and address remains on the postcard which allegedly injured Mitchell. Mitchell has done nothing to withdraw that smoking gun from the litigation. Thus, Mitchell and Hood remain adverse for purposes of the case at bar.

   d. Inquiry into Amount in Controversy

As mentioned above, Trahan raises the issue of jurisdictional amount as a separate challenge to this Court's subject matter jurisdiction. When determining the amount in controversy, the Fifth Circuit recognizes that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Reinsurance Co., Ltc. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). In order to prove a claim for a determinate amount of damages is not made in good faith, it must appear to a "legal certainty" that the plaintiff cannot recover the amount alleged. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). The Plaintiff's burden "is to show by a preponderance of the evidence that it does not appear to a legal certainty that their claim is really for less than the jurisdictional amount." *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir. 1971). "The Court has great discretion in determining whether the jurisdictional amount has been satisfied." *Foret v. Southern Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990).

Mitchell's cited case law establishes that a recovery of $75,000 is plausible on these

facts. The Court finds the damages awards for defamation claims sufficiently analogous to support diversity jurisdiction on the claims at issue. *See e.g.*, *College Network, Inc. v. Moore Educ. Publrs., Inc.*, 378 Fed.Appx. 403 (5th Cir. May 12, 2010) (jury verdict of $150,000 for reputation damages); *Steed v. St. Paul United Methodist Church*, 728 So.2d 931 (La.App. 2 Cir. 02/24/00) (jury verdict award of $90,000 in defamation claim). Thus, Mitchell has met her burden.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Movant's Motions to Dismiss for Lack of Subject Matter Jurisdiction (R. Docs. 118, 121, 125, 128) are hereby **DENIED**.

**IT IS FURTHER ORDERED** that the stay on discovery and discovery proceedings authorized by this Court's November 25, 2015, Order, R. Doc. 138, is hereby **LIFTED**.

New Orleans, Louisiana this 2nd day of December, 2015.

_____
UNITED STATES DISTRICT JUDGE