UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIANA AARON MITCHELL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5875** |
| **BRETT HOOD** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Brett Hood.   R. Doc. 153.   Having reviewed the briefs and the applicable law, the Court now issues this Order & Reasons.

I. **BACKGROUND**:

This case involves a run-off election between Plaintiff Kiana Aaron Mitchell and Judge Ernestine Teena Anderson-Trahan for Second City Court Judge for the City of New Orleans, which took place Saturday, December 8, 2012. Specifically, this case pertains to a negative campaign postcard mailed to Algiers residents before the run-off election, which accused the Plaintiff of assaulting a pregnant woman. The campaign postcard indicated that it was "[p]aid for by B. Hood," and listed a Washington, D.C. address as the return address. An investigation revealed that the named individual, Brett Hood, resided at the address referenced in the postcard.

On September 19, 2013, Plaintiff filed a complaint against Defendant Brett Hood ("Hood") seeking damages for "falsely attacking [Plaintiff's] fitness for public service and revealing personal information about [Plaintiff] in a manner that was injurious to [her] personal, professional and political reputation . . ."   R. Doc. 1.   Mitchell also avows that she is entitled to damages for invasion of privacy generally.   R. Doc. 1 at 11.   Mitchell later amended her complaint to add a cause of action for abuse of right to the freedom of expression.   R. Doc. 30 at

1

6. Hood filed an answer denying the allegations.

## II. Present Motion

Defendant Hood filed a motion for summary judgment on March 1, 2016. R. Doc. 153. Relying on the depositions of members of Judge Trahan's election campaign, Hood contends that Mitchell cannot provide evidence in support of her claim that Hood was responsible for the content of the postcards. R. Doc. 153-1 at 3–14.

### A. Hood's Motion for Summary Judgment

Hood first turns to the deposition of Andrew Tuozzolo, a political consultant who worked on Judge Trahan's campaign. R. Doc. 153-1 at 3–4. Excerpts from Mr. Tuozzolo's deposition suggest that he never met or heard of Mr. Hood.

Hood then cites the deposition of Betty Thibodeaux, another political consultant for Judge Trahan's campaign. R. Doc. 153-1 at 4. Thibodeaux's deposition suggests that she was contacted by Mr. Joe Sobol, and asked if she could arrange to have the postcard printed, post marked, and mailed. Thibodeaux testified at deposition that "B. Hood" was not mentioned until after the postcards had been designed, and that Sobol told Thibodeaux to use Hood's name and address for both the return address and disclaimer on the postcard. R. Doc. 153-1 at 4–5. Thibodeaux also testified that she never met with Hood, or received any money from him in payment for printing the postcards.

Hood next quotes the deposition testimony of Sobol. R. Doc. 153-1 at 8. Sobol is yet another political consultant, and at the time he worked with the Trahan Campaign through the Crescent City Democrats Association. Sobol testified that he was responsible for mailing the postcards, after receiving the design for the postcards from either Jacques Morial or Tammy Major (Judge Trahan's campaign manager). Sobol further testified that he never met Hood, and

was not aware of Hood paying for the postcards in any capacity. Sobol could not pinpoint who paid for the postcards, but he named Tammy Major and Krystal Ancar (Judge Trahan's campaign treasurer) as possibly providing the payment check. R. Doc. 153-1 at 10–11. When pressed to remember who told him to put Hood's name on the postcard, Sobol stated that Tammy Major was his best guess. R. Doc. 153-1 at 11. Sobol also stated that Jacques Morial was the "architect" of the postcard. R. Doc. 153-1 at 11–12.

Hood's deposition of Major similarly suggests that she never met, spoke to, or received money from Hood. R. Doc. 153-1 at 12–13. Hood argues that because Sobol pointed to Major as one of the funders of the postcard, the fact that she never met or received money from Hood significantly weakens Mitchell's case. R. Doc. 153-1 at 13.

Hood lastly turns to the deposition of Lillian Dunn, an employee of Judge Trahan's election campaign. Dunn disputes that she obtained the police report which was the subject of the postcard, but Hood notes that "Lillian Dunn" was the name used to sign for the police report. R. Doc. 153-1 at 14. However, she admits that she has never met with, spoken to, or been paid by Hood. R. Doc. 153-1 at 14.

Based on the deposition testimony, Hood advances three primary arguments in support of his position that there is no genuine issue of material fact before the Court. First, Hood asserts that Mitchell cannot point to any evidence which suggests that Hood was involved in the dissemination of the postcards, despite the "Paid for by B. Hood" language on the postcards. R. Doc. 153-1 at 15–16. Hood emphasizes that no one in Judge Trahan's campaign linked him to the payment of the postcards. Hood further avers that he cannot be linked to any point in the causal chain of the dissemination of the postcards. In sum, he claims that: (1) Lillian Dunn signed for the police report; (2) Jacques Morial designed the postcard; (3) Judge Trahan's

campaign paid for the postcards; (4) Mr. Sobol and Ms. Thibodeaux managed distribution of the postcards; (5) Hauser printed the postcards; and (6) Direct Plus mailed the postcards.  R. Doc. 153-1 at 16.

Second, Hood cites case law and argues that Mitchell cannot prove an abuse of right on the part of Hood.  Hood reiterates his position that Mitchell fails to present any evidence of Hood's association with the postcards, and that Hood therefore cannot sustain his burden of proving that Hood acted with the intent to cause harm to another.  R. Doc. 135-1 at 16–18. Third, Hood argues that Mitchell cannot prove consequential or incidental damages.  Hood takes the position that Mitchell's damages are too speculative to be cognizable under Louisiana law. Hood also avers that Mitchell cannot prove that she would have won if not for the postcard, and that Mitchell similarly cannot prove any damage to her reputation or political career.

### B.  Mitchell's Response

Mitchell responds and opposes Hood's Motion.  R. Doc. 164.  Mitchell argues that Hood has failed to demonstrate an absence of genuine issues of material facts: 1) as to whether Hood abused his right of freedom of expression afforded by the Louisiana Constitution or 2) with respect to Hood's involvement in the publication of the postcards.  R. Doc. 164 at 1. Mitchell also asserts that she is able to present sufficient proof of damages for her claim under the abuse of right of freedom of expression.  R. Doc. 164 at 5.

Mitchell claims that there are genuine issues of material fact as to whether Hood was really an "unwitting patsy who fell victim to an unscrupulous political campaign" or was instead an active participant in a conspiracy against Mitchell, such that the Court should not grant Hood's motion.  R. Doc. 164 at 5.  Mitchell also argues that the testimony presented by Hood suggesting that various Trahan campaign members did not know who Hood is or never spoke to

Hood does not rule out his involvement in the mailing. R. Doc. 164 at 7. Most significantly, Mitchell points to the testimony of Hood's former counsel, Dane Ciolino, stating that he withdrew from the representation because he perceived a potential conflict between the interests of his client Hood and Trajan, who was paying for and was involved in the representation. R. Doc. 164 at 10. The potential conflict of interests arose because, according to Ciolino's testimony, Hood claimed to know nothing about the postcard while Trajan or McClinton led Ciolino to understand that Hood was in fact involved. R. Doc. 164 at 10.

Mitchell asserts that, in order to respond in a satisfactory manner to Hood's Motion, it is necessary to take the deposition of Ernestine Anderson Trahan. R. Doc. 164 at 2. Mitchell alleges that because the postcards were published for Trahan's benefit in the campaign, and because Trahan engaged, paid for, and consulted with Hood's counsel in this case despite publicly denying that she knew Hood, her deposition would generate evidence germane to the instant Motion. R. Doc. 164 at 3. Mitchell further alleges that she has diligently attempted to discover the roles Trahan and Hood played in the publication but has been thwarted by Trahan in every attempt to obtain a deposition, citing the Mitchell's numerous attempts to compel Trahan's testimony. R. Doc. 164 at 4. Currently, Trahan's deposition is scheduled for March 25, 2016 (nine days after the hearing in this Court on the Motion for Summary Judgment), and Trahan has filed a motion to quash. R. Doc. 164 at 4. Accordingly, Mitchell requests that this Court either reset the submission date for the Motion or defer a ruling on the Motion until Trahan's testimony is obtained. R. Doc. 164 at 2.

### C. Hood's Reply

Hood timely replies with leave of Court. R. Doc. 166-2. Hood reiterates the arguments presented in his Motion for Summary Judgment. Hood emphasizes that Mitchell has the burden

of proof in this case, and contends that Mitchell presents no affirmative evidence which could create an issue of material fact. R. Doc. 166-2 at 2–4. Hood also denies that Judge Trahan's retention of an attorney for Hood creates an issue of fact. R. Doc. 166-2 at 5.

## III. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *see also Anderson*, 477 U.S. at 249-50. In ruling on a summary judgment motion, however, a court may not resolve credibility issues or weigh evidence. *See Int'l*

*Shortstop, Inc. v. Rally's Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

"In considering a motion for summary judgment, the district court has discretion to, *inter alia,* defer ruling on the motion or allow the nonmoving party additional time to obtain further discovery if the nonmovant 'shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *Beverly v. Wal-Mart Stores, Inc.*, 428 F. App'x 449, 451 (5th Cir. 2011) (citing Fed. R. Civ. Pro. 56(d)). An affidavit or declaration showing that the nonmovant cannot present facts essential to its opposition is not strictly required; the nonmovant may simply set forth some statement to the court indicating why additional discovery is needed and how it would create a genuine issue of material fact. *See Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001); *Littlejohn v. Shell Oil Co*., 483 F.2d 1140, 1146 (5th Cir. 1973) ("Form is not to be exalted over fair procedures.").

### B. Discussion

Plaintiff Mitchell fails to satisfy her burden, because she presents no evidence which creates an issue of material fact. Once a movant for summary judgment has demonstrated the basis for summary judgment,[1] the burden shifts to the opposing party to present more than "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Davis v. Fort Bend County*, 765 F.3d 480, 484 (5th Cir. 2014) (citations omitted). Plaintiff Mitchell's

---

[1] Hood satisfies his burden in this respect. The deposition testimony attached to his motion for summary judgment clearly identifies the grounds for summary judgment in this matter. *See* R. Docs. 153-3, *et seq*.

7

causes of action all sound in Louisiana'a abuse of rights doctrine, which imposes fault "upon a party who attempts to exercise a right legally given it with the intention of harming or imposing a detriment upon another." *Lambert v. Maryland Cas. Co.*, 403 So. 2d 739, 755 (La. Ct. App. 1981) *writ granted sub nom. Lambert v. Maryland Cas. Co.*, 407 So. 2d 734 (La. 1981) and *aff'd*, 418 So. 2d 553 (La. 1982). Plaintiff Mitchell's discovery[2] has failed to identify anything beyond a scintilla of circumstantial evidence in support of her claim, so her case must be dismissed.

### i. Mitchell's Evidence of Hood's Intent to Abuse Rights

The evidence in Mitchell's favor can be summarized as the following chain of events and inferences.

1. Hood concedes that his fraternity brother, Kelvin McClinton, asked to serve as a reference for Judge Trahan. Hood also concedes that he agreed to this arrangement despite never having met Judge Trahan.

2. A malicious postcard was later mailed which stated "Paid for by B. Hood," and included Hood's address. The postcard was not signed or otherwise marked with Hood's seal of approval.

---

[2] The Court notes that while some witnesses have yet to be deposed in this matter, Plaintiff Mitchell has slept on her right to discovery. The stay on discovery in this matter was lifted on June 16, 2015. R. Doc. 88. Aside from a brief one-week stay of discovery in November 2015, R. Docs. 134, 144, Plaintiff Mitchell has had numerous opportunities to schedule Judge Trahan's deposition. While the Court did quash a subpoena scheduled for December 29, 2015, the Court also ordered the parties to meet and confer by Wednesday, December 23, 2015, to set a deposition. R. Doc. 152. Plaintiff Mitchell noticed her motion to compel deposition on March 4, 2016, over two months after being ordered to set a date. The scheduling order, agreed to by Mitchell, stated that depositions shall be taken and all discovery shall be completed not later than March 4, 2016. R. Doc. 146. While the Court agrees that Judge Trahan has attempted to obstruct depositions in this matter at every turn, the Court declines to delay resolution of this matter further given Mitchell's contributions to the delay. *See Wichita Falls Office Associates v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) (providing the three-step test for ruling on a Rule 56(f) motion, but noting that "the trial court need not aid non-movants who have occasioned their own predicament through sloth."). The Court also considers it unfair to cause Hood further expense, as the behavior of the parties indicates that Mitchell is more interested in obtaining a deposition of Judge Trahan for purposes of state court litigation than in pursuing her claim against Hood.

3. While no deponent has provided any evidence of Hood's involvement with the mailing of the postcard, Mitchell contends that it is still possible that Hood played a role in the postcard's publication.

4. Judge Trahan, whose campaign undoubtedly benefited from the mailing of the postcard and is possibly subject to civil liability in state court,[3] retained Dane Ciolino on Hood's behalf following Mitchell's filing of the instant action.

In contrast, Hood has provided substantial deposition evidence that the individuals associated with the printing of the postcard and Judge Trahan's campaign did not have any knowledge of Hood. *See* R. Doc 153-1 at 4-14.

ii. Mitchell's Burden

After viewing all of the evidence in the light most favorable to Mitchell, her proposed evidence does not satisfy her burden to survive summary judgment. Mitchell's evidence of Hood's affirmative attempt to exercise his right to free speech is at best minute and circumstantial, and at worst blatantly conclusory.

Mitchell's first piece of evidence, Hood's admission that he agreed to serve as a reference for Judge Trahan, does not constitute an attempt to exercise his right to freedom of speech that

---

[3] The Court suspects that Mitchell's interest in Hood's liability has waned. This federal case appears to have primarily become a method to avoid Article 519 of the Louisiana Code of Evidence, with a dark-horse possibility of imposing some liability on Hood. La. Code Evid. art. 519. The Court notes in dicta that some of Article 519's requirements may not apply in federal court. At least one federal court has identified "procedural . . . requirements" in Article 519, *Hall v. Louisiana*, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *6 (M.D. La. Apr. 23, 2014), and the text of the article explicitly states that the article affords "procedural protections" and "procedural provisions" alongside its explicit invocation of the judicial deliberative process privilege. La. Code Evid. art. 519. These procedural aspects of Article 519 may be mere docket-control mechanisms rather than cognizable privileges, and therefore may not be binding under the twin aims of *Erie*. *See Hanna v. Plumer*, 380 U.S. 460, 468 (1965). This must be balanced against the fact that federal courts borrow state privileges when sitting in diversity, and Article 519 is located in a chapter entitled "Testimonial Privileges." La. Code Evid. ch. 5; *cf. Marlow, L.L.C. v. BellSouth Telecommunications, Inc.*, 686 F.3d 303, 309 (5th Cir. 2012) ("The whole-act-rule . . . provides that one section of an enactment is analyzed in light of the whole").

consequently injured Mitchell. Serving as a reference, even without having met the individual one agrees to support, is not a cognizable abuse of the right to free speech. Every citizen has the right to support the candidate of their choosing. The Court would grossly overstep its power to impose civil liability on an individual merely for participating in uninformed advocacy. However, Mitchell's concession does provide a "scintilla" of evidence that Mitchell agreed to lend his support to the postcard. *Davis*, 765 F.3d at 484. At the very best, it proves that Hood supported Judge Trahan's campaign in a limited fashion. But many individuals supported Judge Trahan's campaign, and they are not before the Court. Therefore, Hood's admission provides very little support for Mitchell's efforts to prove that Hood abused his right to freedom of speech.

Mitchell's second piece of evidence, Hood's name and address on the postcard, is her strongest evidence of liability. But this alone is insufficient to satisfy her burden of proof under the standard for summary judgment. There is no evidence that Hood authorized the postcard or even knew anything about it. Hood's name and address are merely circumstantial evidence, and this evidence is grossly outweighed by the evidence which suggests that no party who admits a relationship with the postcard had any relationship or contact with Hood. In essence, Mitchell argues that "Hood's name is on it, so the jury may conclude that Hood exercised his right to free speech by paying for it." This inference is merely a conclusory, self-serving assertion. *See id.* The card was not signed. All parties associated with the card deny knowledge of Hood. No checks or money orders have been found. On these facts, no reasonable jury could find that Hood paid for the postcard or otherwise used his right to free speech in this context. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1996) (holding in a libel suit that it would be unreasonable for a jury to rule based solely on its distrust of the defendant when the plaintiff

presented no concrete evidence).

Mitchell's last piece of evidence concerns Judge Trahan's decision to employ Mr. Ciolino to represent Mr. Hood at the outset of this litigation. Again, this is mere circumstantial evidence of a relationship between Mr. Hood and the postcard, and its weight is extraordinarily slight. Hood's name was on a postcard associated with Judge Trahan's campaign—there are any number of reasons why Judge Trahan might wish to bring Hood into the fold. Further, given that this case was filed in September 2013 and has traveled to the Fifth Circuit, Hood likely wishes that more individuals had generously offered to pay for his counsel (and their ever-mounting legal fees). Mitchell therefore presents another "scintilla" of circumstantial evidence that Hood was affiliated with the postcard in some capacity, but two scintillas cannot prove an abuse of the right to freedom of speech.

The totality of Mitchell's sparse, circumstantial evidence is insufficient to meet her burden. The Court's finding is supported by the overwhelming evidence that Hood did not pay for or otherwise exercise his right to freedom of expression regarding the postcard. Betty Thibodeaux, a political consultant who arranged to have the postcards printed, post marked, and mailed, claims that she never met or spoke with Hood. R. Doc. 153-1 at 4–8. Mr. Sobol, a political consultant who worked with the Trahan campaign, testified that he placed the order to have the postcards mailed. He also testified that he never received any money from Hood, spoke with Mr. Hood, or otherwise knew of any affiliation between Hood and the postcards. R. Doc. 153-1 at 8–9. Tamara Major, Judge Trahan's campaign manager, stated that she recalled very little of the postcard, but she did remember that she never spoke to or met with Hood. R. Doc. 153-1 at 13. Mitchell's inability to produce one individual who can connect Hood to the postcard reveals her complaint for what it is—a conclusory assertion that if a name is printed on

a postcard, it must be attributed to that individual. Therefore, her claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Hood's Motion for Summary Judgment, R. Doc. 153, is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Trahan's Motion to Quash Subpoena and Motion to Expedite Motion to Quash Subpoena, R. Docs. 167, 168, are hereby **DISMISSED AS MOOT**.

New Orleans, Louisiana this 17th day of March, 2016.

_____
UNITED STATES DISTRICT JUDGE